ENGEL VAN LINES, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

United Van Lines, Inc., Intervening Defendant.

Civ. A. No. 1327–73.

United States District Court,
D. New Jersey.

Feb. 21, 1974.

William P. Ries, Maplewood, N. J., Brodsky, Linett & Altman, by Robert J. Gallagher, New York City, Todd, Dillon & Sullivan, by William P. Sullivan, Washington, D. C., for plaintiff.

Hugh W. Cuthbertson, Washington, D. C., for Interstate Commerce Comm.

William J. Hanlon, Newark, N. J., Rebman & Aschemeyer, by F. Neil Aschemeyer, St. Louis, Mo., for intervening defendant.

Before GARTH, Circuit Judge and COOLAHAN and LACEY, District Judges.

## OPINION

COOLAHAN, District Judge:

The instant case comes before this Court pursuant to 28 U.S.C. § 2325 [1] requiring a District Court of three judges to be convened in suits attacking orders of the Interstate Commerce Commission. Plaintiff, Engel Van Lines, Inc. (Engel), is a corporation organized in New Jersey and has its principal office in Elizabeth, New Jersey. This District is thus a proper venue. 28 U.S.C. § 1398.[2]

Engel is a motor common carrier, transporting household goods in interstate and foreign commerce, and as such is subject to the jurisdiction of defendant Interstate Commerce Commission (Commission). 49 U.S.C. § 1 et seq. On August 24, 1970 Engel applied to the Commission for a certificate of "public convenience and necessity" to operate without gateway requirements [3] in eight States in which Engel has restricted operating rights. Engel further applied for unlimited operating right in five States in which it had not operated previously. Engel's desire is to have its vans traverse the States immediately west of the Mississippi River and travel into the southwestern States without having to travel through selective cities —thereby avoiding the greater distances and costs attendant to the "gateway" requirements. The petition before the Commission was opposed by certain motor common carriers of household goods and was supported by several of Engel's potential corporate customers as well as by the Department of Defense.

After six days of hearings and the filing of briefs by the parties and others having interest in the application, the Hearing Examiner filed his report and recommended order denying Engel's application. Engel thereupon filed exceptions to the report and recommended order, but the conclusions of the Hearing Examiner were affirmed and adopted by Division 1 of the Commission. The full Commission later denied a petition filed by Engel for a Finding of General Transportation Importance, thereby affirming the rejection of Engel's entire application.

The requirement that a motor common carrier obtain a certificate of "public convenience and necessity" from the Commission prior to engaging in interstate commerce is created by section 306 of the Interstate Commerce Act, 49 U.S. C. § 306(a).[4] The Act, 49 U.S.C. §

1. 28 U.S.C. § 2325 provides: "An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

2. 28 U.S.C. § 1398 provides: ". . . any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action."

3. As defined by the Commission in its brief, at p. 2 n. 4: "A gateway is a point common to separate grants of authority through which shipments are routed in order to provide a through carrier service between the territory served under one authority and that served under another and separate authority."

4. ". . . no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, or within

307(a), sets out the criteria to be used by the Commission in issuing certificates of public convenience and necessity:

" . . . a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

 Engel rests primarily on Fifth Amendment due process grounds. Engel avers that the Commission, in reviewing its application was required to follow—and did not properly follow—the doctrine of Fernstrom Storage & Van Co., 107 M.C.C. 556 (1968), 110 M.C.C. 452 (1969), aff'd sub nom. Aero Mayflower Transit v. United States, CCH Fed. Carr. Cas. ¶ 82.308 (S.D.Ind.1971), appeal denied, 406 U.S. 904, 93 S.Ct. 216, 34 L.Ed.2d 166 (1972), which, Engel claims, set standards "less exacting" for household movers to obtain certificates of public convenience and necessity than for other motor common carriers.

The *Fernstrom* case, like the instant action, had two stages: a decision by Division 1 of the Commission, reported at 107 M.C. 556 (1968), and a decision of the entire Commission, reported at 110 M.C.C. 452 (1969). Unlike the instant action, however, the full Commission reversed the decision of Division 1, thereby granting the authority requested by the moving van operator. It is the contention of Engel that the Commission in *Fernstrom* created a new doctrine for grants of certificates of public

convenience and necessity to household movers wherein "the Commission granted the application and did not consider the ability of existing carriers to provide the service" (Engel brief at p. 12). Engel apparently bases its interpretation on the fact that the Commission overturned Division 1's ruling in *Fernstrom* without specifically disavowing Division 1's decision "that there was no dearth of available existing service."

The decision by Division 1 in *Fernstrom,* however, indicates that there was a substantial amount of evidence presented for the proposition that existing services were inadequate. See the summary of this evidence at 107 M.C.C. 561. The Commission in *Fernstrom* merely exercised its prerogative to accord greater weight to this evidence than did Division 1. That the Commission based its decision substantially on a finding of inadequacy of existing service may be seen in its holding that:

". . . the salient deficiency which emerges from all the testimony is the seeming inability of existing carriers to provide timely service, or, in many cases, to even make timely commitments to perform a service which the public is entitled to and for which the demand is ever increasing, particularly with respect to prompt pickup and delivery of household goods. It is our conclusion, therefore, that the existing household goods carriers are not able to provide the service which we deem to be reasonably adequate in many instances, particularly during peak periods of the moving season . . .

We also cannot overlook the dramatic population growth within the last two decades and the fact that the population is more mobile . . . ." [110 M.C.C. at 455]

It can be seen from this language that while the full Commission did not depart from Division 1's evaluation of the quality of existing service, there was a dif-

---

any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations. . . ."

ference in view as to how such service was meeting existing needs.

Engel lastly contends that it has been denied due process in that the Commission did not follow *Fernstrom* but instead relied on the case of King Van Lines, Ext. 48 States, 114 MC.C. 866 (1972), decided after all evidence had been presented in the instant matter but before the Hearing Examiner had rendered his written opinion. It is contended that the Commission in *King* returned to the pre-*Fernstrom* standard, wherein household movers were again required to show a greater degree of public convenience and necessity, *i. e.*, a greater inadequacy of existing service.

If the *King* decision represented a departure from the reasoning of *Fernstrom,* such a change was not reflected in the outcome of the *King* case itself. The Commission in granting the extension of service requested by King clearly found that "existing household goods carriers are not able to provide reasonably adequate service in many instances, particularly during peak periods of the moving season." 114 M.C.C. at 870. In addition, the Commission in *King*, as in *Fernstrom*, took into consideration the increasing need for household moving services:

" . . . we consider the need for a rapidly expanding service based on economic gains, demographic changes, and increased population mobility in all parts of the nation to be of particular importance. It is clear, then, that the foreseeable needs of the moving public require that applicant's service be made available in order to insure that our transportation system is responsive to the nation's needs . . .

The grants of authority made in these proceedings have been consistent with the Commission's endorsement, in *Fernstrom*, of additional competi-

tion in the nationwide moving business . . ." [114 M.C.C. at 871–72]

Engel's argument can only be based on language in the *King* case that indicated the Commission would, in cases following *King*,[5] take into consideration the added service that the Commission contemplated in granting the applications in the *Fernstrom, King,* and contemporaneously filed cases:

"The decisions on these applications are responsive to conditions which existed at the time of their filing. Needless to say, however, these grants do not herald an era of free entry into the field of transcontinental household goods transportation. It is to be expected that, with the authorization of such additional services, and with our recent promulgation of comprehensive new regulations covering the movement of household goods, the quality of available service will have been elevated considerably. Thus, in the future, our determinations of public convenience and necessity in this field will necessarily accord due weight to the evidence then before us, of the extent to which the public's service needs are already being met by authorized carriers." [114 M.C.C. at 872]

A reading of the decision and order rendered in the instant case by Division 1 of the Commission on January 11, 1973 shows that the Division did rely on the foregoing language in the *King* decision:

" . . . the administrative law judge's findings are in conformity with the decision in *King Van Lines, Inc.* . . . in which Division 1 concluded that in the future determinations of public convenience and necessity in the household goods field will necessarily accord due weight to the evidence of the extent to which the public's services are already being met by authorized carriers; and that

5. It may be pointed out that King Van Lines made its application to the Commission contemporaneously with that of Fernstrom

Storage & Van Co. (Report of Hearing Examiner at p. 16). The instant application was filed at a later date.

the evidence of record in this proceeding indicates that the services of existing carriers are adequate and that no need has been demonstrated by the supporting shippers for any of the additional services proposed by applicant . . . ."

■ Engel has been unable, however, to adduce any law showing that the Commission was bound under the due process clause of the Fifth Amendment to accord to Engel the same favorable conclusion as was accorded the applications in the *Fernstrom* and *King* cases. It is evident from the foregoing analysis that the standards applied in the three cases were consistent. In the instant case, however, the ability—in the view of the Commission—of existing carriers to bear the burden of the traffic necessitated a rejection of the application. That the Commission itself helped to change the factual background for post-*King* applications does not necessitate the Commission's pretending that the facts have not changed. On the contrary, failure by the Commission to take into account the increased availability of services after *King* would constitute an important change in standards adverse to the interests of protesting carriers.

■ Even if, however, this Court were to find that the essential criteria applied in the instant case was at variance to that used in prior cases, there would still be no adequate grounds for a reversal of the Commission's decision. The law is quite clear that courts have "no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it." Virgin-

ian Ry. v. United States, 272 U.S. 658, 665–666, 47 S.Ct. 222, 225, 71 L.Ed. 463 (1926). Also see Towne Services Household Goods Transp. Co. v. United States, 329 F.Supp. 815, 820 (W.D.Tex. 1971); Akers Motor Lines, Inc. v. United States, 352 F.Supp. 606, 609 (W.D. N.C. 1973).[6]

It is clear that the Commission has wide discretion to determine the question of public convenience and necessity. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). All that is required is that the Commission's decision be supported by substantial evidence, Illinois C.R. Co. v. Norfolk & W.R. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S. Ct. 687, 90 L.Ed. 821 (1945); Virginian Ry. Co. v. United States, supra, 272 U.S. at 663, 47 S.Ct. 222; Metropolitan Shipping Agents of Illinois, Inc. v. United States & Interstate Commerce Commission, 342 F.Supp. 1266, 1268 (D.N.J. 1972); Smith & Solomon Trucking Co. v. United States, 255 F.Supp. 243, 249 (D.N.J.1966), and "[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the [Commission]." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934).

■ Under well established standards promulgated by the Commission, Engel must meet one of two alternative tests before a certificate of public convenience and necessity may be issued to it. The first test is that announced in Pan American Bus Operation, 1 M.C.C. 190, 203 (1936);

---

6. Engel further has been unable to show that it relied on what it thought to be the weaker *Fernstrom* criteria 'and failed to present its strongest evidence to the Commission. In fact, attorneys for Engel have stated in oral argument before this Court that any additional evidence that might be presented would not require a change in result:

"JUDGE GARTH: Let me ask you this, Mr. Gallagher: What you are telling the Court then is that if you were obliged in

the first instance to meet the standards which you conceive to be a new standard as enunciated in King, that you would not have the proofs to do it. Am I correct in that?

MR. GALLAGHER: If that is the same standard that applied prior to Fernstrom, which resulted in twenty years of denials of applications, transcontinental, we don't believe we could break the barrier." [Tr. 30]

"The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest."

Under the alternative test, referred to as the "gateway elimination theory," the carrier need only prove that gateway elimination will lead to economies and that the applicant "is actually transporting a substantial volume of traffic from and to the points involved by operating in good faith through the gateway and, in so operating, is effectively and efficiently competing with the existing carriers . . . ." Service Trucking Co., Inc., Extension—Frozen Pies and Pastries, 88 M.C.C. 697, 700 (1962). Service Trucking thus permits the grant of an application, under the proper circumstances, even though the public demand and need are being adequately met by existing lines or carriers.[7]

■ This Court has reviewed the record[8] and has determined that there is a rational basis for the Commission's denial of Engel's application under both the Pan American and Service Trucking theories.[9] In connection with the Service Trucking doctrine, the record shows that much of the traffic cited by Engel in its evidence presented to the Commission as traffic handled by Engel was shipped through carriers operating as agents for Engel. (See Commission transcript, pp. 118, 136) The record simply fails to prove that Engel by itself had been effectively and efficiently competing with the existing carriers.

The Examiner's report states (p. 9) that a check of one-half of the bills of lading underlying Engel's study "showed that a substantial number of the shipments were transported by carriers other than [Engel]." Under such circumstances—without a valid study by Engel supporting its position—the Commission could well conclude that Engel had failed to meet its burden of proof under Service Trucking. Engel, further, has not, in the arguments and briefs before this Court, contested this aspect of the Commission's ruling.

Engel has, lastly, failed to demonstrate, under the Pan American test, that the needs of the shipping public cannot adequately be met by existing services. The Government has summarized in its brief (pp. 21–23) the testimony of witnesses representing seven customers of national household movers who are coping well with existing services and realize that there are several

7. If "the elimination of the gateway requirement would . . . enable applicant to institute a new and better service so different from that presently provided as materially to improve [applicant's] competitive position at the expense of existing carriers," Service Trucking Co., Inc., Extension—Frozen Pies and Pastries, supra at 700, the applicant must meet the Pan American requirements and show that existing services are inadequate for the public demand and need. Because the Court is upholding the Commission's finding that Engel did not meet the Service Trucking requirement of actual transport of a substantial volume of traffic through its gateways, this additional question is not at issue in this case.

8. In the context of judicial review of a Commission determination that an applicant has failed to meet its burden of proof, this Court sees "substantial evidence" as meaning a "rational basis" for denial of the application. Mississippi Valley Barge Line Co. v. United States, supra.

9. The Report and Order, Service Date May 13, 1972, of Hearing Commissioner Paul J. Clerman specifies the evidence presented to the Commission: data on Engel's personnel, equipment and assets, safety procedures, and its admittedly excellent relations with its customers. Also considered were statements and data in support of Engel's argument that a grant of its application would have a beneficial effect on both Engel and its customers. Supporting statements of the Department of Defense and 38 public witnesses, half of whom represented large companies interested in expanding facilities for the moving of household goods for their newly hired employees, were also reviewed.

carriers they can patronize. While there were witnesses claiming that it would be a great convenience for their companies if Engel's application were granted, this Court must respect the view of the examiner (Report, p. 18) that "nothing" adduced by witnesses supporting Engel's application and "nothing in the record as a whole establishes that there is a public demand or need for transportation services, services which protestants and existing carriers generally are unable or unwilling to supply."

For the foregoing reasons the Court will entertain an order dismissing plaintiff's complaint.