**WARREN TRANSPORT, INC.,**
Petitioner,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Respondents.**

No. 75–1203.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1975.

Decided Nov. 10, 1975.

Daniel C. Sullivan, Chicago, Ill., for petitioner.

Walter H. Walker, III, Washington, D. C., for I.C.C.

Before CLARK,* Associate Justice, and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

Warren Transport, Inc. brings this petition for review of a final Interstate Commerce Commission order denying it a certificate of public convenience and necessity for operating authority as a common carrier over irregular routes transporting highway construction equipment and supplies between various points in the United States and Beadle County, South Dakota. The Commission found that petitioner already holds extensive authority to serve the shipper, Huron Manufacturing Corporation, by transporting the various commodities either by tacking or interlining. However, Warren seeks complete direct authority to serve the shipper.

The Review Board denied the application in full based on its finding that Warren's existing service was not materially inadequate and that the supporting shipper, Huron, had failed to adequately demonstrate specific transportation needs. The Commission affirmed the findings of the Review Board. Warren urges that the Commission erred in (1) basing the denial on a failure to show that Warren's own service was inadequate, and (2) finding that the need for the proposed service was not adequately demonstrated by the supporting shipper. We disagree and therefore affirm the Commission's denial of the certificate.

■ The inadequacy of existing service is one of several elements on which the Commission may base its exercise of discretion in granting a certificate of public convenience and necessity. As stated in *Feature Film Service, Inc. v. United States,* 349 F.Supp. 191 (S.D.Ind. 1972):

> The adequacy or inadequacy of existing service is a basic ingredient in the determination of public convenience and necessity, but it is not and may not be used as the sole test in determining whether public convenience and necessity exist. . . . Successful past operations of the applicant, along with other factors, are also entitled to consideration in determining public need.

349 F.Supp. at 201.

■ In addition to finding that the existing service was adequate, the Commission expressly considered the total lack of evidence by the supporting shipper as to its need for the proposed service. There exists substantial evidence on the record as a whole to support the Commission's finding.

In *Pan-American Bus Lines Operation,* 1 M.C.C. 190 (1936), the Commission promulgated certain guidelines governing an application for a certificate of public convenience and necessity:

> The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest.

1 M.C.C. at 203.

The factors considered by the Review Board in the instant case clearly fall

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

within these standards. The Supreme Court in *ICC v. Parker Motor Freight,* 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945) set out the narrow limits of judicial review. The Court stated:

Public convenience and necessity is not defined by the statute. The nouns in the phrase possess connotations which have evolved from the half-century experience of government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for similar purposes for railroads in the same act since the Transportation Act of 1920, § 402(18) and (20), 41 Stat. 477, 49 U.S.C.A. § 1(18, 20). Such use indicated a continuation of the administrative and judicial interpretation of the language. Cf. *Case v. Los Angeles Lumber Co.,* 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110. The Commission had assumed, as its duty under these earlier subsections, the finding of facts and the exercise of its judgment to determine public convenience and necessity. This Court approved this construction. *Chesapeake & Ohio R. Co. v. United States,* 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824. Cf. *Gray v. Powell,* 314 U.S. 402, 411–12, 62 S.Ct. 326, 332, 86 L.Ed. 301. *The purpose of Congress was to leave the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity.* Cf. *Powell v. United States,* 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, cf. *McLean Trucking Co. v. United States,* 321 U.S. 67, 87–88, 64 S.Ct. 370, 380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances.

326 U.S. at 65, 65 S.Ct. at 1492 (emphasis added).

Recently, the Supreme Court in discussing whether a Commission order was "arbitrary or capricious" observed:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

Earlier the Court in *McLean Trucking Co. v. United States,* 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944), in an opinion by Mr. Justice Rutledge, said:

In short, the Commission must estimate the scope and appraise the effects of the curtailment of competition which will result from the proposed consolidation and consider them along with the advantages if improved service, safer operation, lower costs, etc., to determine whether the consolidation will assist in effectuating the over-all transportation policy. Resolving these considerations is a complex task which requires extensive facilities, expert judgment and considerable knowledge of the transportation industry. Congress left that task to the Commission "to the end that the wisdom and experience of that Commission may be used not only in connection with this form of transportation, but in its coordination of all other forms." 79 Cong. Rec. 12207. "The wisdom and experience of that commission," not of the courts, must determine whether the proposed consolidation is "consistent with the public interest."

321 U.S. at 87–88, 64 S.Ct. at 381.

And in *ICC v. Jersey City,* 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944), the

Supreme Court quoted from the earlier decision of *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 145–46, 59 S.Ct. 754, 83 L.Ed. 1147 (1939):

"So long as there is warrant in the record for the judgment of the expert body it must stand * * * 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'"

322 U.S. at 513, 64 S.Ct. at 1134.

■ These maxims are well known to lawyers practicing before the ICC. *We repeat them here with purpose in mind.* This is one of the first cases to be reviewed by our court under the new legislation allowing petition for review to the circuit court rather than to a three-judge district court, with right of review to the Supreme Court.[1] The effect of the new law is an obvious one: it lightens the burden of direct review by the Supreme Court and avoids the cumbersome procedure of a three-judge district court.

However, litigants disappointed in ICC proceedings should not entertain the false hope that the circuit courts of appeals will overturn many Commission decisions or modify the law regarding the scope of judicial review of the Commission's final orders.[2]

■ In this circuit a petition for review of a Commission's order will be denied on a summary basis when the order is based on the evidence and supported by a rational judgment of the Commission. This does not mean that this court will fail in its obligation to review thoroughly every record to ascertain that evidence as a whole supports the Commission's findings and that the proper legal standards have been applied.

It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed

such an abuse of discretion as to require reversal by the courts. That such limited review was the intent of Congress is clear. *See ICC v. Parker Motor Freight,* 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945). We feel counsel for ICC litigants are adept and knowledgeable enough to discern those rare circumstances warranting review. Attorneys are officers of the courts as well as advocates for clients. The filing of frivolous appeals in any field of litigation is inimical to both responsibilities.

The petition for review is denied.

---

1. Pub.L. No. 93–584, § 5 (Jan. 2, 1975), amending 28 U.S.C. § 2321.

2. That such false hopes may exist is demonstrated by the Commission counsel's estimation at oral argument that petitions for review of ICC orders have substantially increased since the passage of the new Act. Dockets in courts of appeals throughout the country are already bulging. Unmeritorious petitions for review of Commission orders will undoubtedly exacerbate existing problems.