532 F.2d 1199
 HILT TRUCK LINE, INC., a corporation, Petitioner,
Midwest Coast Transport, Inc., et al., Intervenor-Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Schneider Transport, Inc., Intervenor-Respondent.
 No. 75-1269.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 11, 1975.
Decided March 31, 1976.
 
 A. J. Swanson, Lincoln, Neb., for petitioner. Stern, Harris, Feldman, Becker & Thompson, Omaha, Neb., and Peterson, Bowman, Coffman & Larsen, Lincoln, Neb., on brief for petitioner Hilt Truck Lines, Inc. and intervenors Midwest Coast Transport, Inc., Kodiak Refrigerated Lines, Inc., and Curtis, Inc.
 Lawrence Frier, Atty., I. C. C., Washington, D. C., for appellees, I. C. C. and United States; Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Fritz Kahn, Gen. Counsel, I. C. C., Washington, D. C., on brief.
 Charles W. Singer, Fort Lauderdale, Fla., for intervenor-respondent Schneider Transport, Inc.; Singer, Sullivan & Smyth, P. C., Chicago, Ill., Gregory A. Stayart, Fort Lauderdale, Fla., on brief.
 Before HEANEY, WEBSTER and HENLEY, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 Hilt Truck Line, Inc. brings this petition for review of a final order of the Interstate Commerce Commission granting the application of Schneider Transport, Inc. for a certificate of public convenience and necessity for operating authority as a common carrier over irregular routes transporting (1) canned goods and animal feed from three states in the far west to a twenty-six state area in the midwest, mideast, and east; and (2) unfrozen dinners from certain California sites to the same designated area. See 28 U.S.C. §§ 2321 and 2342.
 
 
 2
 Schneider Transport filed its application on April 5, 1971, pursuant to 49 U.S.C. § 307. The Interstate Commerce Commission referred the proceedings to an Administrative Law Judge, and hearings were held December 6-7, 1971, and continued on December 18-19, 1972. Eight motor carriers filed an appearance in opposition to the application.[1] The application was supported by five shippers: Topco Associates, Inc.; Hunt-Wesson Foods, Inc.; Kal Kan Foods, Inc.; North Pacific Canners & Packers, Inc.; and National Can Corporation.
 
 
 3
 In a report and recommended order filed May 1, 1973, the Administrative Law Judge found that public convenience and necessity required operation by Schneider Transport within the scope of the application and recommended that a certificate be granted. Exceptions were filed by several protestants and replied to by Schneider Transport. In a decision and order filed July 15, 1974, the Commission found that there was insufficient evidence to warrant the finding that the rates of regular route carriers were so expensive as to constitute an embargo against the movement of shipper traffic, but that the recommended grant of authority was otherwise warranted by the record evidence. The Commission thus affirmed and adopted as modified the findings and conclusions of the Administrative Law Judge.
 
 
 4
 Petitions for reconsideration were denied by the Commission on March 6, 1975, and a certificate of public convenience and necessity was issued to Schneider Transport on April 30, 1975. Thereafter, Hilt Truck Line initiated this petition for review, contending that the order of the Commission was based on findings of fact which were inadequate and unsupported by evidence in the record, and that the Commission thus erred in finding (1) that the need for the proposed service was adequately demonstrated by the supporting shippers, (2) that the existing service of the regular and irregular route carriers was inadequate to fulfill the needs of the supporting shippers, and (3) that no impairment of the operation of existing carriers contrary to the public interest would result from the grant of authority.[2] We disagree and therefore affirm the decision of the Interstate Commerce Commission.
 
 
 5
 Evaluation of the present and future public convenience and necessity is a matter for the sound judgment and discretion of the Interstate Commerce Commission. See Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051, 2058 (1945); McLean Trucking Co. v. United States, 321 U.S. 67, 87-88, 64 S.Ct. 370, 380, 88 L.Ed. 544, 556 (1944). Accordingly, this Court has recognized that the recent amendment of28 U.S.C. § 2321[3] does not alter the limited scope of review of Commission orders:
 
 
 6
 In this circuit a petition for review of a Commission's order will be denied on a summary basis when the order is based on the evidence and supported by a rational judgment of the Commission. This does not mean that this court will fail in its obligation to review thoroughly every record to ascertain that evidence as a whole supports the Commission's findings and that the proper legal standards have been applied.
 
 
 7
 Warren Transport, Inc. v. United States, 525 F.2d 148, 151 (8th Cir. 1975). Assessing the instant petition for review under this standard, we find little merit to the contentions of the petitioners.
 
 
 8
 The guidelines governing an application for a certificate of public convenience and necessity were promulgated by the Commission in Pan-American Bus Lines Operation, 1 M.C.C. 190, 203 (1936):
 
 
 9
 The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest.
 
 
 10
 See Warren Transport, Inc. v. United States, supra, 525 F.2d at 149; Artus Trucking Co. v. Interstate Commerce Commission, 377 F.Supp. 1224, 1228-29 (E.D.N.Y.1974); Engel Van Lines, Inc. v. United States, 374 F.Supp. 1217, 1221-22 (D.N.J.1974). The burden of proof on these standards of public convenience and necessity is placed on the motor carrier seeking operating authority. Tri-State Motor Transit Co. v. United States, 369 F.Supp. 1242, 1244 (W.D.Mo.1973); Lester C. Newton Trucking Co. v. United States, 264 F.Supp. 869, 885 (D.Del.), aff'd mem., 389 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29 (1967). In an attempt to demonstrate that the Schneider Transport application was approved in an arbitrary and capricious manner, petitioners broadly contend that the Commission acted on the basis of insufficient evidence and without proper consideration of these guidelines.
 
 Provision of a Useful Public Service
 The Commission found that:
 
 11
 (T)he available traffic of the supporting shippers is of such a substantial nature that the service of an additional carrier is needed in order that satisfactory and responsive motor carrier service is available to shippers * * * .
 
 
 12
 The record shows that the supporting shippers were capable of generating substantial traffic and that a large portion of this traffic would be diverted from rail to motor carrier if certain shipping needs were met. The testimony of the shippers was that a prompt, dependable service with substantial flexibility of a type not provided by rail carriers was desired. Schneider Transport proposed to provide such service, and the shippers have offered to tender substantial traffic to Schneider Transport.[4] The inadequacy of existing service, discussed below, was also probative of the public service which the grant of authority to Schneider Transport would produce.
 
 
 13
 The finding that a useful public service would be provided by the operating authority was thus adequately supported by the record.[5]
 
 Inadequacy of Existing Service
 The Commission further found that:
 
 14
 (T)he evidence is persuasive that present carriers alone have been unable to respond satisfactorily to shippers' reasonable transportation needs * * * .
 
 
 15
 A review of the record indicates that this determination was also supported by substantial evidence.
 
 
 16
 The Commission found that the Administrative Law Judge had erred in holding that the rates of regular route carriers constituted an embargo. The Commission recognized, however, that the rate differential was not the sole evidence of the inadequacy of existing regular route service. The record specifically indicated that regular route carriers lack the requisite flexibility for multiple delivery service, cause delays due to interchanges, and are unable to respond to specialized delivery requirements of the supporting shippers.
 
 
 17
 The record also demonstrates the inadequacy of the existing service of irregular route carriers. At the time of the initial hearing, substantial irregular route service to and from the geographic area involved was unavailable. Evidence at both the initial and continued hearings demonstrated that those of the protestants which could provide service to the area lacked the authority to transport animal foods or animal foods in mixed loads, as required by certain of the shippers, and had rendered service to the shippers which was less than satisfactory. Most important, however, was the evidence of National Can Corporation at the continued hearing. This shipper provided substantial evidence that its future transportation requirements (and, by inference, those of the other shippers) could not be satisfactorily fulfilled by the existing irregular route carriers.[6]
 
 
 18
 In making its determination, the Commission may take into account not only present needs but also future requirements of shippers, and the ability of existing carriers to supply such projected service will not preclude the Commission from granting authority to an applicant. Interstate Commerce Commission v. Parker, supra, 326 U.S. at 70, 65 S.Ct. at 1495, 89 L.Ed. at 2061. See United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639, 641 (1967); Schaffer Transportation Co. v. United States, 355 U.S. 83, 90-91, 78 S.Ct. 173, 177, 2 L.Ed.2d 117, 122 (1957).
 
 Effect on Existing Carriers
 
 19
 A grant of operating authority which allows the entrance of a new competitor into markets serviced by existing carriers will necessarily produce an adverse effect on those carriers. Existing carriers are without a basis for complaint, however, when the provision of new service is in the public interest. As recognized in Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756, 761 (E.D.Va.), aff'd mem., 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590 (1950):
 
 
 20
 Competition among public carriers may be in the public interest and the carrier first in the business has no immunity against future competition. * * * Even though the resulting competition causes a decrease of revenue from one of the carriers, the public convenience and necessity may be served by the issuance of a certificate to a new competitor. (citations omitted)
 
 
 21
 See Mitchell Bros. Truck Lines v. United States, 327 F.Supp. 796, 798 (D.Or.1971); Atlanta-New Orleans Motor Freight Co. v. United States, 197 F.Supp. 364, 370 (N.D.Ga.1961). As originally stated in Pan-American Bus Lines Operation, supra, 1 M.C.C. at 203, the propriety of a grant of authority depends on whether it can be exercised "without endangering or impairing the operations of existing carriers contrary to the public interest." (emphasis added). Existing carriers are thus protected against unfair or destructive competition, but not from the effects of competition itself. See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 297-98, 95 S.Ct. 438, 448, 42 L.Ed.2d 447, 462 (1974); Norfolk Southern Bus Corp. v. United States, supra, 96 F.Supp. at 761. As stated in Central Motor Lines, Inc. v. United States, 309 F.Supp. 336, 339 (W.D.N.C.1969): "The primary consideration is the interest of the public not the relative economic advantages of competing carriers." (emphasis original).
 
 
 22
 Petitioners contend that harm will result from introduction of an additional carrier into an area lacking in traffic sufficient to support further authority. Not only is this argument directed at mere competitive impact, but it is contrary to the finding of the Commission, which we affirm here, that substantial need exists for the service sought to be provided by Schneider Transport.
 
 
 23
 The finding that the grant of authority poses no threat of impairment of existing operations that would be contrary to the public interest is adequately supported by the record.
 
 
 24
 As this Court recognized in Warren Transport, Inc. v. United States, supra, 525 F.2d at 151: "It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed such an abuse of discretion as to require reversal by the courts." The present order is no such rarity. Since the order is based on the evidence and supported by a rational judgment of the Commission, the petition for review must be denied.
 
 
 
 [1]
 T.I.M.E.-D.C., Inc.; Midwest Coast Transport, Inc.; Hilt Truck Line, Inc.; IML Freight, Inc.; Kodiak Refrigerated Lines, Inc.; Curtis, Inc.; Consolidated Freightways Corporation of Delaware; and Pacific Intermountain Express Co., Inc. entered an appearance, and all but the latter submitted evidence
 
 
 [2]
 Midwest Coast Transport, Inc.; Kodiak Refrigerated Lines, Inc.; and Curtis, Inc. have intervened in the petition for review. Schneider Transport, Inc. has intervened as a respondent
 
 
 [3]
 Pub.L. No. 93-584, §§ 5 and 7 (Jan. 2, 1975) (eliminating the three-judge district court procedure for review of orders of the Interstate Commerce Commission). See also 28 U.S.C. § 2342
 
 
 [4]
 Petitioners apparently direct their argument at the prospective nature of the evidence of the supporting shippers. The fact that the evidence here was based on projected future needs and promises does not, however, render such evidence insubstantial. As the Supreme Court noted in United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38, 42 (1945):
 (N)either uncertainties as to the future nor the inability or failure of existing carriers to show the sufficiency of their plans to meet future traffic demands need paralyze the Commission into inaction. It may be that the public interest requires that future shipping needs be assured rather than left uncertain. The Commission has the discretion so to decide.
 
 
 [5]
 Petitioners would also find error in the inconsistency of the present grant of authority with Schneider Transport, Inc., Extension North Dakota Canned Goods, No. MC-51146 (Sub-No. 303) (May 29, 1974), which denied Schneider Transport an authority which duplicated a minor portion of the authority sought in the instant application. The prior decision, however, concerned different supporting shippers and protestants than those presently involved and was part of a broader proceeding in which extensive authority was granted to Schneider Transport. The "public convenience and necessity" is inevitably a dynamic concept, and depends upon the circumstances extant in each particular application. The prior decision is therefore immaterial to the question of whether the present record supports the finding under review. See Virginian Ry. v. United States, 272 U.S. 658, 665-66, 47 S.Ct. 222, 225, 71 L.Ed. 463, 467 (1926)
 
 
 [6]
 Petitioners also contend that the Administrative Law Judge and hence, the Commission, gave no consideration to the operating authorities issued to certain of the petitioners and other motor carriers during the pendency of the proceedings. See generally West Brothers, Inc., Extension Baton Rouge, La., 108 M.C.C. 485, 489 (1969); Younger Brothers, Inc., Extension Bishop and Port Arthur, Tex., 79 M.C.C. 469, 473 (1959). The recommended order of the Administrative Law Judge, however, specifically referred to certain authorities received by petitioners Hilt and Midwest as well as other carriers during the proceedings. Moreover, the Administrative Law Judge explicitly overruled Schneider Transport's motion to strike evidence of these grants of authority on the ground that they were not issued until after the initial hearing