MIDWEST COAST TRANSPORT, INC., Petitioner,

Little Audrey's Transportation Company, Inc., et al., Intervening Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Pirkle Refrigerated Freight Lines, Inc. and Kraft Foods, Division of Kraftco Corporation, Intervening Respondents.

No. 75–1248.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1975.

Decided June 7, 1976.

---

Walter H. Walker, III, Atty., I. C. C., Washington, D. C., for the U. S. and I. C. C.; Fritz R. Kahn, Gen. Counsel, I. C. C., Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., on the brief.

Charles W. Singer, Chicago, Ill., for intervening respondents; Daniel C. Sullivan and Richard L. Price, Chicago, Ill., on the brief.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is a petition for review of a final order of the Interstate Commerce Commission granting expanded operating authority to Pirkle Refrigerated Freight Lines, Inc., which has intervened in the case as a respondent. Petitioner, Midwest Coast Transport, Inc., has been joined in the action by a number of other motor carriers which have been permitted to intervene as petitioners. Kraft Foods, Division of Kraftco Corporation, a substantial shipper of food products, has been permitted to intervene herein as a respondent.

Respondent, Pirkle, is a large trucking company which for a number of years has held certificates of public convenience and necessity issued by the Commission and authorizing Pirkle to haul as a common carrier various and sundry products, including food products, from certain points of origin to certain destinations. Pirkle is in direct competition with the other carriers which have come into the case.

The challenged authority granted to Pirkle permits it to haul products described generically as "foodstuffs" and "food ingredients" over irregular routes from all points in Minnesota and Wisconsin, and from Estherville, Iowa,[1] to all points in the western states of Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming. Pirkle is authorized to return from the destina-

Bruce A. Bullock, Omaha, Neb., for Midwest Coast Transport; Arnold L. Burke, Chicago, Ill., for Little Audrey's Transp. Co.; Donald L. Stern and Stern, Harris, Feldman, Becker & Thompson, Omaha, Neb., Burke, Kerwin, & Towle, Chicago, Ill., on the brief.

---

1. Estherville is a small city located in the extreme northern part of Iowa only a short distance south of the Minnesota state line.

tion states to points of origin shipments of foodstuffs and food ingredients which are rejected by consignees. The authority is subject to two restrictions which are not important in this litigation.

Notice may be taken of the fact that vast quantities of food products, including frozen foods and pre-packaged foods, are shipped out of Minnesota and Wisconsin every year to points all over the country, including points in the eleven western states that have been mentioned. Many of the shipments are in less than truckload lots. Substantial quantities of food products are also shipped out of Estherville, Iowa each year.

Prior to the granting to Pirkle of the broad operating authority here challenged, all of the carriers involved in the case, including Pirkle, were operating under "fragmented" authorities which seriously handicapped them in their ability to serve nationwide shippers with diversified product lines and expanding markets.

Generally speaking, these fragmented authorities limited hauling to specifically identified food items from specifically identified points of origin to specifically identified points of destination.

When Pirkle filed its application for expanded authority in 1971, it held thirty different authorities allowing it to haul certain food products from Minnesota and Wisconsin into the eleven western destination states. Twenty-seven of its authorities allowed shipments from identified points of origin in Wisconsin; the other three allowed shipments from identified points of origin in Minnesota. It had no authority to haul out of Estherville.

The fragmentation of authorities that we have described in general terms is well illustrated by Pirkle's three Minnesota sub-certificates. Under one of them Pirkle could haul "dairy products" from St. Paul, Minnesota into eight of the eleven western states but not into the other three. Under another authority it could haul powdered milk from Belle Plaine, Minnesota to Phoenix, Arizona, Portland, Oregon, Spokane, Washington, and points in California, Montana, and Wyoming, but only under certain restrictions. Under the third, it could haul cheese from five locations in Minnesota into all eleven of the western states.

Pirkle's authority to haul westward out of Wisconsin was similarly fragmented, and the general situation in which Pirkle found itself did not differ substantially from that of the other carriers with which Pirkle was in competition.

From a transportation standpoint, this fragmentation of the operating authorities of the carriers was undesirable. The carriers could not readily meet expanding needs of shippers as the latter developed new products, established new plants, and acquired additional markets. Additionally, the fragmentation made extensive interlining of freight necessary, and interlining is expensive and time consuming, and it increases the risk of delay in transit and of loss of or damage to cargoes.

Manifestly, the expanded authority that has been granted to Pirkle enables it to provide much better service to shippers and consignees than was available to them prior to the grant of the authority. Under its present authority Pirkle can haul a broad category of food products from anywhere in Minnesota and Wisconsin and from Estherville to any point in the western destination states. Probably, the principal benefit that shippers and consignees will derive from the service is the elimination of a great deal of the interlining that had to be carried out prior to the grant of authority.

Pirkle's application was filed in November, 1971, and drew immediate opposition from Pirkle's competitors.[2] The matter was referred to an Administrative Law Judge who held an evidentiary hearing that

---

2. One of the protestants was Little Audrey's Transportation Company, Inc., which is one of the intervening carriers. It appears from the record that at some time prior to the granting of the application challenged in this case, the Commission had denied what was perhaps a similar application filed by Little Audrey's. *Little Audrey's Transportation Co., Inc., Extension—Frozen Foods*, 120 M.C.C. 467 (1974).

consumed four days in May, 1972. In September of that year the judge filed a long report and recommended order granting the application. Exceptions to the report and recommended order were filed and denied by a Review Board of the Commission in April, 1973, and motions for reconsideration were finally denied by an Appellate Division of the Commission in February, 1974.

Petitioner, Midwest Coast, then filed suit against the Commission and the government in federal court in South Dakota and obtained a temporary restraining order which prevented the Commission's action from being implemented at the time. A three judge district court was convened, as was then required, and ultimately the case was sent back to the Commission for more specific findings.

The Commission reopened the case and on March 26, 1975 served an opinion and order adhering to its original determination that Pirkle's application should be granted. *Pirkle Refrigerated Freight Lines, Inc., Extension—Western States,* 121 M.C.C. 218 (1975). By that time 28 U.S.C. § 2321 had been amended by the Act of January 2, 1975, P.L. 93–584, and Midwest Coast filed its petition for review directly in this court.

Midwest Coast and the intervening carriers contend that the action of the Commission was illegal, arbitrary and capricious, and that its findings are not supported by substantial evidence. While apparently conceding, at least to a point, that the Commission may have been justified in granting Pirkle the authority that it sought as far as Wisconsin is concerned, the complaining carriers strenuously object to the grant of authority as it affects Pirkle's operations in Minnesota and as it grants Pirkle authority to haul out of Estherville. Petitioners argue, among other things, that the Commission failed to give proper consideration to the adverse effect that the grant to Pirkle will have on their own businesses, and they contend, to some extent alternatively, that in all events Pirkle's authority should have been limited to specific plant sites of shippers.

Naturally, the respondents, including Pirkle and Kraft, contend that the order of the Commission should be affirmed in all respects.

In two very recent decisions this court has emphasized the narrow scope of judicial review that is available in a case of this kind. *Hilt Truck Line, Inc. v. United States,* 532 F.2d 1199 (No. 75–1269, 8th Cir. March 31, 1976); *Warren Transport, Inc. v. United States,* 525 F.2d 148 (8th Cir. 1975).

In *Hilt, supra,* we said:

> Evaluation of the present and future public convenience and necessity is a matter for the sound judgment and discretion of the Interstate Commerce Commission.
>
> . . .

532 F.2d at 1201.

And in *Warren, supra,* 525 F.2d at 151, the court stated:

> In this circuit a petition for review of a Commission's order will be denied on a summary basis when the order is based on the evidence and supported by a rational judgment of the Commission. This does not mean that this court will fail in it's obligation to review thoroughly every record to ascertain that evidence as a whole supports the Commission's findings and that the proper legal standards have been applied.
>
> It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed such an abuse of discretion as to require reversal by the courts. That such limited review was the intent of Congress is clear. *See ICC v. Parker Motor Freight,* 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

When the Commission is called upon to determine whether a certificate of public convenience and necessity authorizing new or expanded service should be granted, it is faced with a three-fold question:

1. Will the proposed operation serve a useful public purpose, responsive to a public demand or need?

2. Can and will the purpose be served as well by existing lines or carriers?

3. Can the purpose be served by the applicant with the new operation or service without impairing the operations of existing carriers contrary to the public interest? See *Pan-American Bus Lines Operation*, 1 M.C.C. 190, 203 (1936), cited with approval in *Hilt* and *Warren*, both *supra*.

■ In its opinion in the instant case the Commission expressly recognized the *Pan-American* criteria just mentioned and also recognized additional criteria laid down in *Novak Contract Carrier Application*, 103 M.C.C. 555, 557 (1967). Under those criteria an applicant must show the commodities which the shippers or consignees ship or receive; the points to or from which their traffic moves; the volume of freight that the shippers would tender to the applicant; the transportation services presently available; and any deficiencies in existing services. 121 M.C.C. at 222–23.

The Commission found ultimately in 1975, as it had found before, that the public convenience and necessity called for the granting of the authority sought by Pirkle. That ultimate finding was preceded by a detailed discussion of the evidence and of the applicable legal principles. The Commission's opinion is published and readily available to interested persons including attorneys who practice regularly before the Commission or before the courts in cases of this nature. Hence, no useful purpose would be served by our undertaking to abstract or quote from the opinion in detail.

The Commission found that the application was supported by twenty-three substantial shippers operating in Minnesota and Wisconsin and in Estherville. On the basis of evidence offered on behalf of the application the Commission found that service to the west from the area with which we are concerned was inadequate due to the excessive fragmentation of the operating authorities held by all of the carriers, that the service that Pirkle desired to offer was better than the existing services, and that Pirkle was in a position to provide the service. On the basis of the fact that twenty-three shippers had come forward in support of the application the Commission inferred that there was a general need for the improved service throughout Minnesota and Wisconsin and out of Estherville. *Cf. Atlanta-New Orleans Motor Freight Co. v. United States*, 197 F.Supp. 364 (N.D.Ga. 1961). While the Commission was not required to draw that inference, we are not prepared to say that it was an arbitrary or impermissible one or that it had no basis in substantial evidence.

There is no dispute that the grant of expanded authority to Pirkle will probably draw some business away from petitioners, and that they will sustain some loss as a result of the diversion. The Commission took note of that fact but pointed out that petitioners were not entitled to have their traffic protected in all circumstances. And the Commission also pointed out that petitioners and Pirkle were already competitors in the general area involved here, and the Commission did not consider that losses that petitioners might sustain would be such as to impair their ability to continue to serve the public, presumably at a profit to themselves.

■ In a case of this kind losses that competing carriers may suffer if a particular competitor is permitted to offer a new service or to expand an existing one must be balanced against the public interest in having the new or expanded service provided, and we think that the balancing function is one that is peculiarly within the competency of the Commission.

The matter of plant site restrictions was not discussed in terms of the Commission's opinion; it seems clear, however, that the Commission was aware that petitioners were urging such restrictions largely for the purpose of protecting themselves against revenue losses, and that the Commission rejected their arguments sub silentio; at least, the Commission did not accept those arguments.

■ The briefs indicate that in instances the Commission imposes plant site restrictions in connection with grants of authority and in other instances refuses to impose them. While the imposition of such a re-

striction can protect a competing carrier from loss of revenue or can limit a grant of operating authority which might be over-broad without it, such an imposition can also militate against a broader public interest in having a new or improved service made generally available to shippers and consignees. We think that the question of whether plant site restrictions are to be imposed as a condition to a grant of operating authority is one that addresses itself to agency discretion, and we are not persuaded that we should interfere with the exercise of that discretion in this case.

Toward the end of its opinion the Commission dealt to some extent with the question of whether the result that it was reaching in this case conflicted with the result reached in *Little Audrey's Transportation Co., Inc., Extension—Frozen Foods*, 120 M.C.C. 467 (1974). The Commission pointed out that each of these cases must be decided in the light of its own facts and circumstances, and that there were distinctions between *Little Audrey's* and this case. To the extent that the agency decision in *Little Audrey's* may have created a problem in this case, we think that the Commission handled the problem satisfactorily.

If we were trying this case de novo on the administrative record, we might or might not agree with the result reached by the Commission, but that is beside the point. As has been seen, it is not our function to retry the case or to substitute our judgment and discretion for those of the Commission. From our consideration of the record as a whole we cannot say that the findings of the Commission are not supported by substantial evidence or that the action taken by the Commission was arbitrary, capricious, an abuse of discretion or otherwise unlawful. Accordingly, the order of the Commission is affirmed.