**HUNT TRANSPORTATION, INC., and Diamond Transportation System, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

**Sammons Trucking, Intervenor–Respondent.**

**No. 80–1128.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1980.

Decided Nov. 7, 1980.

---

Sanford M. Litvack, Asst. Atty. Gen., Barry Grossman, Nancy C. Garrison, Attys., Dept. of Justice, Washington, D. C., Richard A. Allen, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, Robert J. Grady, Atty., for I. C. C.

James B. Hovland, Hovland & Gambucci, Minneapolis, Minn., for intervenor, Sammons Trucking.

Marshall D. Becker, Paul D. Kratz of Stern & Becker, P.C., Omaha, Neb., for Hunt Transp., Inc. and Diamond Transp., System, Inc.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and PORTER,* District Judge.

PER CURIAM.

This case presents an appeal by Hunt Transportation, Inc. (Hunt), and Diamond Transportation System, Inc. (Diamond) from an order of the Interstate Commerce Commission (ICC) granting motor common carrier authority to Sammons Trucking (Sammons). Hunt argues that the Commission did not properly support its decision with adequate findings of fact and conclu-

sions of law, and that the decision of the ICC is not supported by substantial evidence in the record. We enforce the Commission's order.

The Interstate Commerce Act demands that an applicant for motor common carrier operating authority establish it is "fit, willing, and able * * * to provide the transportation to be authorized by the certificate; and * * * the transportation to be provided under the certificate is or will be required by the present or future public convenience and necessity." 49 U.S.C. § 10922(a) (Supp. 1978).[1]

■ Once the Commission has determined that the applicant is fit, willing and able to provide the proposed service, and that such service is required by the public convenience and necessity, the standard by which the Commission's determination is judged by this Court is quite limited. The appropriate standard of review was stated in *Warren Transport, Inc. v. United States*, 525 F.2d 148 (8th Cir. 1975):

> In this circuit a petition for review of a Commission's order will be denied on a summary basis when the order is based on the evidence and supported by a rational judgment of the Commission.

*Id.* at 151. *See also Tri–State Motor Trans. Co. v. United States*, 570 F.2d 773, 777 (8th Cir. 1978); *B. J. McAdams, Inc. v. ICC*, 551 F.2d 1112, 1116 (8th Cir. 1977); *Midwest Coast Transport, Inc. v. ICC*, 536 F.2d 256, 259 (8th Cir. 1976); *Hilt Truck Line, Inc. v. United States*, 532 F.2d 1199, 1201 (8th Cir. 1976).

Reviewing the instant petition under this standard, we conclude that there is substantial evidence in the record as a whole to

---

\* The Honorable DONALD J. PORTER, United States District Judge, District of South Dakota, sitting by designation.

1. Congress has conferred upon the Commission broad discretion to evaluate the totality of circumstances surrounding each application and thereafter determine whether additional motor common carrier operations would serve the "public convenience and necessity." *ICC v. Parker*, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051 (1945). "Public convenience and

necessity" is understandably undefined in the Act; as we noted in *Hilt Truck Line, Inc. v. United States*, 532 F.2d 1199 (8th Cir. 1976), it is a dynamic concept which turns upon the facts and circumstances of each particular case. *Id.* at 1202 n.5. Evaluation of the present and future public convenience and necessity, in the end, is a matter for the sound judgment and discretion of the Commission. *Id.* at 1201.

support the Commission's findings and conclusions.[2]

Sammons Trucking of Missoula, Montana, applied for a certificate of public convenience and necessity authorizing its operation, in interstate or foreign commerce, as a motor vehicle common carrier over irregular routes, transporting lumber and wood products from points in Wyoming to points in Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, Pennsylvania, South Dakota and Wisconsin.

The application was opposed by Hunt Transportation, Inc., Diamond Transportation System and Werner Enterprises. The applicant and four supporting shippers submitted verified statements in favor of Sammons' application. Hunt and Diamond both verified statements in opposition to the application.[3]

The Commission, through its Review Board No. 1, granted Sammons' application in its entirety.[4] The ICC's memorandum decision included the following:

> Supporting shipper, Wyoming Sawmills, Inc., manufactures and processes lumber at Sheridan, WY, and ships about 40 truckloads of product monthly from Sheridan to customer locations in Iowa, Wisconsin, Illinois, Indiana, Kansas, Missouri, Michigan, Ohio, Kentucky, and Pennsylvania (representative destinations are provided).

> Timber Wholesalers, a broker of lumber and wood products, at present obtains these products from suppliers at Hulett and Osage, WY, and ships them to customers in Minnesota, North Dakota, South Dakota, Iowa, and Wisconsin (representative points are listed). However, in the near future, Timber Wholesalers anticipates that traffic will originate at other Wyoming points as new supply sources are found. Annual tonnage to the subject destination area amounts to about 500 truckloads.

> Neiman Sawmill, Inc., doing business as Devils Tower Forest Products, produces planed and rough lumber as well as wood chips, sawdust, and bark at its Hulett, WY, sawmill. Neiman ships these commodities from Hulett to the entire 14-State destination territory (representative customer locations are presented).

> Cambria Forest Industries, Inc., operates a sawmill at Newcastle, WY, where it manufactures finished and rough kiln-dried lumber. Cambria ships approximately 700 truckloads of lumber a year from Newcastle to the entire destination area (representative customer locations are provided).

> Shippers require a carrier which (1) is able to provide short-notice, timed pickups, (2) can perform a scheduled, split delivery service not only to customer facilities but to jobsites as well, and (3) operates flat-bed trailers equipped with tarpaulins to protect the lading while in transit and straps to secure the lading to the vehicle. Shippers submit that they are simply unable to obtain sufficient amounts of proper equipment, at specific times requested, to move their large and ever-increasing volumes of Wyoming lumber traffic to the involved destination territory. In support, Neiman presents a list of delayed pickups from August 1978 through May 1979, a number involving protestant Hunt, and Cambria provides an appendix of service failures attributed to existing carriers involving late pickups or no pickups at all.

---

2. We also note that the Commission's findings of fact and conclusions of law are sufficiently particular to satisfy the statutory requirement. 49 U.S.C. § 14(1) (1976). *See Alabama Great S. R. R. v. United States*, 340 U.S. 216, 227–228, 71 S.Ct. 264, 271–272, 95 L.Ed. 225 (1951).

3. Werner Enterprises also filed a verified statement in opposition to Sammons' application, but is not a party to this appeal.

4. Hunt and Diamond filed a petition for administrative review. The Commission's appellate division denied that petition. Thereafter, Hunt and Diamond jointly filed a petition seeking a finding of general transportation importance, which was denied by the full Commission in February, 1980.

Shippers believe that applicant, which maintains a terminal at Missoula, MT, and operates 359 40– and 42–foot flat–bed trailers equipped with full tarpaulins, binders, chains, corner–irons, or nylon straps, will be able to help alleviate their transportation difficulties. If this application is granted, shippers will tender applicant the following volumes: Wyoming Sawmills, 10 per cent of all available traffic; Timber Wholesalers, 15 to 20 percent of all available traffic; Neiman several loads a week; and Cambria, 10 to 15 truckloads a month. However, shippers stress the fact that they need the services of all available carriers and will use them to the extent that they can satisfy their equipment and service requirements.

\* \* \* \* \* \*

Applicant has shown that the present and future public convenience and necessity warrant authorization of its service proposal. The four supporting shippers assert that existing carriers have simply been unable to supply them with sufficient amounts of properly equipped flat–bed trailers, when needed, to accommodate their substantial and continually increasing volumes of lumber and wood products traffic moving within the scope of this application. We believe that shippers have adequately documented this assertion despite protestants' claims to the contrary. We note further that protestants' territorial authorities are lacking to varying extents. They cannot serve certain origins and destinations and, therefore, are precluded from providing shippers with the type of flexible, split delivery service they require at multiple points throughout the subject 14–State destination territory.

\* \* \* \* \* \*

Protestant Hunt is transporting significant traffic within the scope of this application not only for the four supporting shippers here, but for other Wyoming shippers as well. Protestant Diamond is also participating to a substantial extent in traffic moving from and to the subject points–apparently for shippers other than those involved here. Thus a grant of authority in this proceeding may result in some degree of harm to their operations. However, although protestants argue that they will lose revenue as a consequence of applicant's competition, no showing has been made that this loss will be so great as to jeopardize their operations contrary to the public interest. *P. C. White Truck Line, Inc., Ext.–Atlanta, Ga.,* 129 M.C.C. 1, 8 (1978). We note further that shippers will tender applicant only a small percentage of their available traffic and have made clear their desire to continue to use existing carriers should they be in a position to satisfy their equipment and service needs. *Sammons Trucking Extension–Wyoming Wood Products,* No. MC–124692 (Sub. No. 246) F (I.C.C. Sept. 24, 1979) (footnotes omitted).

There is sufficient evidence in the record as a whole to support the decision of the ICC. The verified statements of the shippers support the ICC's finding concerning the shippers' difficulties in receiving equipment when needed. The record also supports the Commission's finding that Sammons can adequately provide the additional service needed.

Finally, there is sufficient evidence in the record as a whole to support the Commission's conclusion that the benefit of granting the certificate to Sammons will outweigh the potential detriment to the protestants Hunt and Diamond, and will serve the public interest.

The Commission specifically notes that the granting of the certificate will adversely affect Hunt and Diamond. But as we reasoned in *Hilt Truck Line, Inc. v. United States,* 532 F.2d 1199 (8th Cir. 1976), the primary consideration is the interest of the public, and not the relative economic advantages or disadvantages of competing carriers. *Id.* at 1203. *See Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 298, 95 S.Ct. 438, 448, 42 L.Ed.2d 447 (1974).

We, therefore, conclude that the ICC correctly determined the requested operation will serve a useful purpose, that this additional service is necessary and that it will not impair the operations of existing carriers contrary to the public interest.

We enforce the order of the ICC.