UNITED STATES of America,
Appellee,

v.

David Baker PIERCE, Defendant-
Appellant.

No. 74–1226.

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1974.

Decided Nov. 13, 1974.

Allan R. Rosenberg, Boston, Mass.
(court appointed) with whom Putnam,
Bell & Russell, Boston, Mass., was on
brief, for appellant.

Robert B. Collings, Asst. U. S. Atty.,
with whom James N. Gabriel, U. S.
Atty., Boston, Mass., was on brief, for
appellee.

Before COFFIN, Chief Judge, ALD-
RICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This selective service appeal raises
what might be called a "second genera-
tion" order of call defense. Appellant
does not claim that the then applicable
32 C.F.R. § 1631.7 was violated when he
and four other I-A registrants were or-
dered, on April 22, 1971, to report for
induction. His claim is that he was
entitled to inspect the files of 52 reg-
istrants holding lower random sequence
numbers than his, whose II-S classifica-
tions he determined from the classifica-
tion Record Books (SSS Form 102) had
not been subjected to annual review in
apparent violation of 32 C.F.R. § 1622.-
21. If inspection were to reveal that
there had been a serious and flagrant
failure to reclassify five or more of these
registrants into I-A, appellant argues

that his order to report for induction should have been voided. The district court had refused discovery under F.R. Crim.P. Rule 16(b), stating that there was no authority for extending the order of call defense beyond I-A's and that appellant's motion would have required judicial review of classifications in violation of 50 App. U.S.C. § 460(b) (3), thus implicitly holding that the requested II-S files were not material to the preparation of appellant's defense.

Appellant relies on the principles we articulated in United States v. Griglio, 467 F.2d 572, 577 (1st Cir. 1972), "that we will not deem a violation of a regulation as applied to third persons a deprivation of due process as to a registrant unless it is apparent that favoritism to another or discrimination against the registrant was intended, or unless the violation is so flagrant and serious that, whether intended or not, concern for fair and efficient administration justifies the sanction of voiding an induction adversely affected by the violation." If the apparent non-adherence to the required yearly evaluation of 52 II-S deferments is a "flagrant and serious" violation, then Griglio, argues appellant, mandates voiding his induction. Although it might well have been the case that some or all of the II-S registrants would not have passed their physical examination or would have qualified for some other non-I-A classification, appellant argues that the board, whose violation of § 1622.31 precluded the happening of these contingencies, should not be allowed to defend by speculation.

There are several problems with extending Griglio, on the facts of this case, to breaches of regulations affecting registrants beyond the immediate I-A pool from which a defendant is called. In the first place, the applicable "order of call" regulation, 32 C.F.R. § 1631.7, was limited to ordering the sequence in which I-A and I-A-O registrants should be called up. That regulation is not violated if all I-A and I-A-O registrants have been fairly treated vis-à-vis each other. It is quite a different matter to argue that although the order of call regulation was properly applied, a registrant was prejudiced because holders of other classifications should have been in the I-A pool.[1] This suggests what we referred to in United States v. King, 455 F.2d 345, 351 (1st Cir. 1972), as "a defendant's ideal world", one which "would involve a justification . . . of all classification decisions or series of such decisions which have removed other registrants from the list of those being called."

As we and other courts have recognized, see, e. g., King, supra, Griglio, supra, United States v. Strayhorn, 471 F.2d 661 (2d Cir. 1972), determining when a local board's noncompliance with regulations should be available as a defense to a registrant himself treated in conformity with the regulations calls for sensitive and sensible line drawing. We think that, absent the most extreme circumstances amounting to a systematic breakdown, the order of call defense should be limited to proof of violation of regulations of a flagrant and serious nature which adversely affect

---

[1]. The government made the argument, on which the district court partially relied, that examination of other classifications would place a court in violation of 50 App. U.S.C. § 460(b)(3), which proscribes judicial review of the classification or processing of any registrant except as a defense to a criminal prosecution against the registrant. We are reluctant to place our decision on this ground. While appellant seeks, in a sense, judicial review of classifications of other registrants, it is not a review which changes those classifications. If the review is successful from the point of view of one in appellant's position, the result is simply to void his induction order. The board is free to issue a new order, although presumably it would have taken action to correct any deficiencies found in the files of other registrants. Any such changes, however, would have been board initiated and only remotely and indirectly the result of "judicial review".

the treatment of a registrant as compared with other I-A's. Such a line has some rational justification. Proof that a I-A registrant with a lower random sequence number than a defendant has been by-passed through a serious failure to follow a regulation inescapably indicates prejudice to that defendant. But proof that a II-S deferment was not terminated and evaluated at the end of the year only points to the possibility that the II-S deferment is presently unjustified. Since students who are satisfactorily pursuing their courses are entitled to a II-S, it is likely that yearly evaluation in many if not most cases would lead to a renewal of the same classification. Even if the II-S classification of a registrant could be shown to be unjustified, there remain several bridges to be crossed before that registrant could be said to belong in a group of I-A's from which a defendant was called. Failure to pass a physical examination, the acquisition of a classification other than I-A, or even the passage of time involved in an attempt to obtain such are some of the contingencies. In short, confining the order of call defense to treatment of I-A's can be justified to some extent by the immediacy and directness of linkage in such a case between a serious violation of a regulation and prejudice to a defendant. Violations of regulations which result in retaining other registrants in other classifications have only a speculative and unprovable impact on a registrant who has been ordered to report. We do not view such administrative improprieties as a significant threat to the fairness of the process.

Another justification for holding the line at I-A's is the inherent difficulty of drawing any other line. If appellant's attack on the basis of the apparent failure to conduct an annual review of the fifty-two II-S deferments is allowed, there exists no basis in principle for confining discovery and attack to those who have noted some prima facie violations from a review of the Classification Books. An assiduous registrant might very well conduct his own survey of the status of holders of II-S deferments, of those claiming family obligations, of those claiming temporary disability, or of those who are supposedly working in an essential occupation. He could, by filing a detailed affidavit casting suspicion on the continued justification of such classifications, gain access to files, and launch a major attack on a host of board decisions or failures to revise decisions.[2] He would understandably not be impressed by the argument that only evidence of violations from the Classification Books could entitle a registrant to mount an expanded order of call defense. He could rightfully respond that his averments of abuse of discretion in applying substantive regulations should carry more weight than a simple failure to conduct an annual review. If equal treatment is afforded, each I-A called for induction could require justification of all of a board's decisions made at any time prior to his call with regard to all holders of lower random sequence numbers.

Appellant's answer to this "parade of horribles" is that such challenges would result in local boards cleaning house and acting properly. By the same token, to bar such a defense as he asserts would reduce the pressures on a board to adhere faithfully to all pertinent regulations. Our response begins with the recognition that the selective service system is somewhat special, both in mission and in the scope of its freedom to

2. Indeed, this occurred in United States v. Sundstrom, 359 F.Supp. 1252 (S.D.N.Y. 1973), aff'd, 489 F.2d 859 (2d Cir. 1973), where the defendant was apparently allowed to scrutinize the files of twenty-four men, only one of whom was classified I-A. The court laboriously endeavored to go through all the files to determine whether the board had acted arbitrarily in not reclassifying young fathers who had left their wives and children, and I-Y registrants with medical, mental, or moral problems of uncertain continuity. Its final conclusion, affirmed by the court of appeals, was that no systematic preferential treatment of deferred classifications had been shown.

act.[3] Its mission is to provide manpower in times of military necessity. Its power to act in the process of classification and induction has been subjected to substantially limited judicial oversight. 50 App. U.S.C. § 460(b)(3); Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed. 418 (1968); Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).

It is from this perspective that we view appellant's argument for the availability of an expanded defense of breach of a regulation which possibly but indirectly has affected the timing of a registrant's induction. Classification decisions are being made daily; there is always room for board discretion both in classifying initially and in reclassifying or deciding not to reclassify. To the extent that this discretion exists, there is room for disagreement. And to the extent that reasonable persons could differ about a decision, there is room to claim a prima facie breach of a regulation. Moreover, errors of judgment will inevitably be made; when they are made, it is likely that the challenging registrant will claim them to be "serious and flagrant". In short, the availability of an "all classifications order of call defense" would open up the prospect of increased uncertainty in meeting draft calls and incalculable complexity in the preparation and conduct of prosecutions. Having in mind the speculative contribution to fairness of the kind of board-ranging discovery sought by appellant, we think this prospect of administrative disruption precludes the extension of *Griglio,* except in the rarest of cases, to a defense based on draft board treatment of registrants other than the defendant and other registrants classified I-A.

Appellant cites two cases which have allowed discovery of the files other than those of I-A's. We have already noted

one of them, *Sundstrom,* where the district court, from an abundance of concern, did allow evidence from the files of twenty-three persons in other classifications. The propriety of this scope of discovery was not apparently in issue before either the district court or the court of appeals. The other case is United States v. Hughes, 5 SSLR 3757, No. 72 Cr. 405 (S.D.N.Y., Oct. 18, 1972), where the court, noting that over a substantial period many registrants' files had been neither reviewed, nor reclassified, based its order allowing discovery of certain files on the observation that "*Wrongful classification is no less egregious than failure to call up a I-A registrant with a higher priority.*" Wrongful classification is indeed egregious, but for the reasons we have set forth, we do not look upon the order of call defense as the guarantor of overall fairness in the selective service system.

Affirmed.

---

3. Our approach is influenced by these characteristics and is not intended as impliedly rejecting other kinds of analysis respecting challenges based on violations of regulations by other agencies. *See,* Note, Violations by

Agencies of Their Own Regulations, 87 Harv.L.Rev. 629 (1974); cf. Safir v. Gibson, 417 F.2d 972 (2d Cir. 1969); Morton v. Ruiz, 415 U.S. 199, 232–235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).