520 F.2d 577
 SCHOOL COMMITTEE OF the TOWN OF MONSON, MASSACHUSETTS, Petitioner,
v.
Gregory R. ANRIG, as Commissioner of Education and Chief
Executive Officer of the Department of Education,
Commonwealth of Massachusetts, Respondent.
 No. 74-1365.
 United States Court of Appeals,
First Circuit.
 Argued March 5, 1975.
Decided June 30, 1975.
 
 William A. Waldron, Boston, Mass., with whom Paul E. Clifford, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for petitioner.
 Michael Eby, Deputy Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and James P. Kiernan, Asst. Atty. Gen., were on brief, for respondent.
 Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 Review is here sought of the Massachusetts Department of Education's (hereinafter the "Department") rejection of an application by the town of Monson on behalf of sixteen communities constituting the "Monson Cooperative" (hereinafter "Monson") for a grant under Title III of the Elementary and Secondary Education Act of 1965, as amended, 20 U.S.C. §§ 841-848 (hereinafter the "Act"). Jurisdiction to review the Department's action is lodged in this court by 20 U.S.C. § 844a(f).
 
 
 2
 Monson contends that the procedures followed by the Department in reviewing its application did not comport with the requirements of the Act and relevant regulations. The Act structures with some specificity the procedural framework within which Title III funds are to be administered. The United States Commissioner of Education is required to allot available funds among the states according to a statutory formula. 20 U.S.C. § 842(a)(2). In order to receive the funds allotted, a state must submit to the Commissioner a state plan which complies with the Act and regulations promulgated under it. 20 U.S.C. § 844a; 45 C.F.R. §§ 118.6-118.20. The allotted funds then become available for grants pursuant to the plan to local education agencies. 20 U.S.C. § 844(a). The form in which applications by local agencies must be made, and the purposes for which grants may be awarded are set forth in detail in the Act and regulations. 20 U.S.C. §§ 843, 844; 45 C.F.R. §§ 118.21-118.27.
 
 
 3
 The Act reposes in the state education agency, here the Department, responsibility for the selection of proposals by local agencies for funding pursuant to the state plan. The Act specifies, however, that each state plan must provide for the establishment of an advisory council "broadly representative of the cultural and educational resources of the State . . . and of the public . . . " which shall "review, and make recommendations to the State educational agency on the action to be taken with respect to, each application for a grant under the State plan. . . . " 20 U.S.C. § 844a(a)(2).[1]
 
 
 4
 Regulations promulgated by the United States Commissioner of Education further provide for the appointment of a
 
 
 5
 " . . . panel of experts, consisting of persons who are not officers or employees of the State educational agency, or the State advisory council to review all local project applications prior to their approval or other disposition. The State educational agency shall determine the number of experts to be utilized and the qualifications to be required of such experts (including one or more experts in the education of handicapped children and one or more experts in guidance, counseling, and testing). . . . ." 45 C.F.R. § 118.23(c).
 
 
 6
 The "review and disposition" of local agency proposals is to follow procedures established by the state agency "in accordance with the requirements of Title III of the Act and these regulations. Such procedures shall provide for coordinating the roles of the State advisory council . . . and the panel of experts . . . with the role of the State educational agency." 45 C.F.R. § 118.23(d).
 
 
 7
 The Monson proposal was reviewed by five "readers", one an outside expert, and the other four employees of the Department. These five readers individually rated the Monson proposal and then met, and, after discussion, agreed on a negative recommendation, transmitted by the chairman of the team of readers to the chairman of the advisory council and to the director of the Bureau of Curriculum Services in the Department.[2]
 
 
 8
 The minutes of the advisory council meeting of May 24, 1974, show that the chairman "distributed a memo listing those proposals which the teams approved for recommendation to the Commissioner." One member moved that a subcommittee be formed to determine whether the approved proposals were in compliance with the portion of the Act requiring the involvement of private schools. The council then proceeded to approve the memorandum listing proposals to be recommended for funding. The Department concedes that there was no discussion of any rejected proposal, including the Monson proposal which was among those rejected, nor do the minutes reflect any discussion of the proposals approved.
 
 
 9
 The Department suggests that the procedures followed in disposing of the Monson application represented tolerable interpretations of pertinent language in the Act and regulations. We should, the Department urges, defer to these interpretations as those of the "agency charged with (the Act's) administration." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In Tallman the Court, after a careful review of the relevant legislative history, determined that the Interior Department's interpretation of its power under a series of Executive and Public Land Orders to lease oil and gas rights in the Kenai National Moose Range was reasonable.[3] We deal here not only with interpretations of procedural rather than substantive provisions, but with interpretations developed by only one of the many states receiving funds which each must administer consistently with the provisions interpreted.
 
 
 10
 The legislative history of § 844a indicates that it represents a compromise between the House which preferred to lodge full responsibility for the use of the funds available with the states, and the Senate which sought to retain such authority in the United States Office of Education. S.Rep.No.726, 90th Cong., 1st Sess., 1967 U.S.Code Cong. & Admin.News at pp. 2748-2750. The states are granted authority to dispose of federal funds, but is an authority webbed about with both procedural and substantive limitations. It would be anomalous in light of this history for the courts, following a policy of deference, to permit the states to develop widely varying interpretations of the very strictures imposed to limit state discretion in the use of federal funds. Indeed, even in the absence of such manifestations of legislative intent, in reviewing administrative actions not subject to explicit procedural limitations the courts have interpolated procedural standards that seemed necessary to assure the fair execution of statutory functions. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Bell Telephone Co. of Pennsylvania v. F.C.C., 503 F.2d 1250 (3d Cir. 1974); Brennan v. Occupational Safety and Health Review Comm'n, 492 F.2d 1027 (2d Cir. 1974); Municipal Electric Utility Ass'n of Alabama v. F.P.C., 158 U.S.App.D.C. 188, 485 F.2d 967 (1973); see also Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 597 (1971).[4]
 
 
 11
 The Department states that the advisory council has delegated to its chairman authority to receive the collective recommendation of the readers, and has established procedures whereby it discusses, with rare exceptions, only those applications approved for funding. We find this procedure wholly inconsistent with the statutory requirement that the advisory council "(r)eview, and make recommendations . . . with respect to, each application for a grant. . . . " 20 U.S.C. § 844a(a)(2)(C) (emphasis supplied). The Act requires that advisory council membership reflect the entire spectrum of interests affected by Title III grants, and specifies that the council must review each application. The evident purpose of these provisions is to forestall any tendency of state education authorities to limit grants to those proposals harmonious with the insular views of a single segment of the community. The advisory council functions to introduce a heterogeneous array of perspectives into the grant award process. The history and plain meaning of the Act govern our interpretation. United States v. New England Coal and Coke Co., 318 F.2d 138, 142 (1st Cir. 1963).
 
 
 12
 We discern a similar purpose in the regulation requiring review of each proposal by a "panel of experts" who are not employees of the state. Here the Department argues that "panel" of experts means a "roster" of experts from which it may select one to be a member of the team of five readers. The Department's interpretation is untenable in the face of the language of the regulation. While the Department determines the number and qualifications of the experts, it must include "one or more experts in the education of handicapped children, and one or more experts in guidance, counseling, and testing . . . ." 45 C.F.R. § 118.23(c). Further, the regulation provides that the "panel" shall review "all local project applications". Id. This language evinces the Commissioner's determination that the diversity of lay interests represented by the advisory council should be supplemented by diverse professional assessments, providing state authorities, the advisory council, and reviewing courts alike with a broader basis on which to evaluate the recommendations of the Departmental readers.
 
 
 13
 We conclude that Monson is correct in asserting that the Department departed from the required procedures in reviewing its application. We think that the Act must be taken at its word in requiring advisory council review of each application. We also think that meticulous compliance with the regulations requires a review of each application by a panel of at least three experts, independent of, and resulting in a separate recommendation from any Departmental review. Burdensome these procedures may be, but they are mandated by the language and history of the Act and attendant regulations.
 
 
 14
 Vacated and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Section 844a(a)(2) provides in full:
 "(2) The State advisory council, established pursuant to paragraph (1) shall
 (A) be appointed by the State educational agency, and be broadly representative of the cultural and educational resources of the State (as defined in section 844(a) of this title) and of the public, including persons representative of
 (i) elementary and secondary schools,
 (ii) institutions of higher education, and
 (iii) areas of professional competence in dealing with children needing special education because of physical or mental handicaps;
 (B) advise the State educational agency on the preparation of, and policy matters arising in the administration of, the State plan, including the development of criteria for approval of applications under such State plan;
 (C) review, and make recommendations to the State educational agency on the action to be taken with respect to, each application for a grant under the State plan;
 (D) evaluate programs and projects assisted under this subchapter; and
 (E) prepare and submit through the State educational agency a report of its activities, recommendations, and evaluations, together with such additional comments as the State educational agency deems appropriate, to the Commissioner and to the National Advisory Council, established pursuant to this subchapter, at such times, in such form, and in such detail, as the Secretary may prescribe."
 
 
 [2]
 The recommendation was communicated orally to the director of the Bureau of Curriculum Services. Monson contends that the oral report was inadequate under the provisions of the state plan. Since we find the Department's procedures at odds with the Act and the regulations, see infra, we need not address this argument. Further we are reluctant to consider claims based on the state plan when the parties have supplied us with only small parts of that plan
 
 
 [3]
 The Court emphasized that the Interior Department's interpretation was consistent with the relevant statute, and had been long on the public record. 380 U.S. at 17-18, 85 S.Ct. 792
 
 
 [4]
 The case would be different if the provisions at issue were intended primarily as internal organizational guidelines, not designed to protect or actually relied on by affected parties. See American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 538, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); United States v. Pierce, 505 F.2d 1053 (1st Cir. 1974)