592 F.2d 8
 APPLEYARD'S MOTOR TRANSPORTATION CO., INC., Petitioner,
and
Coastal Tank Lines, Inc. and Gault Transportation, Inc.,
Intervening Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
and
Petroleum Carriers, Inc., Intervening Respondent.
 No. 78-1287.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 4, 1978.
Decided Feb. 16, 1979.
 
 Maxwell A. Howell, Washington, D. C., for petitioner.
 
 
 1
 Gerald B. Fleming, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel, and Frederick W. Read, III, Associate Gen. Counsel, Washington, D. C., were on brief, for respondent, I. C. C.
 
 
 2
 Robert Lewis Thompson, Atty., Dept. of Justice, Washington, D. C., with whom John H. Shenefield, Asst. Atty. Gen., and Robert B. Nicholson, Asst. Chief, Appellate Section, Antitrust Division, Washington, D. C., were on brief, for respondent, United States.
 
 
 3
 Dwight L. Koerber, Jr., Washington, D. C., with whom Harry C. Ames, Jr., Washington, D. C., Francis E. Barrett, Jr., Hingham, Mass., and Ames, Hill & Ames, P. C., Washington, D. C., were on brief, for intervening petitioners, Coastal Tank Lines, Inc., and Gault Transportation, Inc.
 
 
 4
 Lawrence R. Ehrhard, Springfield, Mass., with whom David M. Marshall, and Marshall & Marshall, Springfield, Mass., were on brief, for intervening respondent, Petroleum Carriers, Inc.
 
 
 5
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 
 
 6
 BOWNES, Circuit Judge.
 
 
 7
 This is an appeal from the granting of a certificate of public convenience and necessity by the ICC authorizing Petroleum Carriers, Inc., to transport petroleum products[1] on irregular routes from points in Rhode Island to points in Massachusetts, and from points in Massachusetts to points in New Hampshire. The matter was handled under the Commission's modified procedure.[2] Six shippers supported the application and four competing carriers opposed it.[3]
 
 
 8
 Review Board No. 1 of the Commission initially denied Petroleum a carrier's application on the ground "that the evidence fails to establish a need for applicant's proposed service which cannot be met by existing carriers." This finding was reversed by Division 1 of the Commission which found that a certificate of public convenience and necessity was justified. The petitioners claim that the decision of the Commission is not supported by substantial evidence and was arbitrary and capricious and, therefore, violated the Administrative Procedure Act. 5 U.S.C. § 706(2)(A), (E).
 
 
 9
 Our role as a reviewing court is limited. "The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted." United States v. Detroit Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed.2d 38 (1945). It has long been recognized that determination of public convenience and necessity lies within the judgment and discretion of the ICC. ICC v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); Hilt Truck Line, Inc. v. United States, 532 F.2d 1199, 1201 (8th Cir. 1976). Against this backdrop, we review the findings of the Commission to determine if they were based on substantial evidence and/or were arbitrary and capricious. Substantial evidence has, since Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951), been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." For repetition of this same theme, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Illinois Central Railroad Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 619-620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).
 
 
 10
 In Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), Reh'g denied, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975), the Court, in applying the arbitrary and capricious standard, stated:
 
 
 11
 Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, supra, (401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136) at 416, 91 S.Ct. at 824. The agency must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (83 S.Ct. 239, 9 L.Ed.2d 207) (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, SEC v. Chenery Corp., 332 U.S. 194, 196 (67 S.Ct. 1578, 91 L.Ed. 1995) (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595 (65 S.Ct. 829, 89 L.Ed. 1206) (1945).
 
 
 12
 We first address the question of whether there was substantial evidence to support the Commission's action. The Commission carefully considered the affidavits of the five supporting shippers which were substantially similar. All of the shippers stated essentially as follows: that they used private carriage for their present needs, that they intended to expand and increase their business, that they were familiar with the operations and equipment of Petroleum, that they wanted to use Petroleum to meet their future needs because of its reliability, schedule flexibility, and excellent equipment and that they were not interested in using the services of any other carrier. The core of the Commission's decision is to be found in the following paragraph.
 
 
 13
 As noted, shippers for the most part have not utilized the existing service of protestants, and it cannot be said on this record that their existing service is inadequate. However, we note that inadequacy of existing service is not indispensable to a finding of need for the proposed service. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646, 653 (D.N.H.1964). Furthermore, we cannot ignore the praise expressed by the supporting shippers for the service now provided by applicant within the limited scope of its existing authority. Expansion of a high quality service is certainly consistent with the public convenience and necessity. We do not believe that it would be appropriate to frustrate applicant's apparent willingness and ability to offer its good service to a larger market area. The beneficial effects of additional competition is also another factor to be considered, especially where the commodities sought to be transported are various petroleum products and related to the Nation's continuing energy concerns. Moreover, since most of the involved traffic has been transported in private carriage, we do not believe that protestants will be adversely affected by a grant of authority to an extent contrary to the public interest. We conclude that a grant will, however, enhance the effectiveness and usefulness of applicant's present service to the supporting shippers. On balance, we find that the beneficial effects resulting from a grant of the proposed service outweigh the harm, if any, to protestants.
 
 
 14
 Given the Commission's acknowledged primacy in deciding what determines public convenience and necessity, we find that there was substantial evidence to anchor the Commission's decision.[4]
 
 
 15
 The claim of arbitrary and capricious action, in addition to a general buckshot attack, specifically alleges that the Commission ignored its past precedents as set forth in Pan-American Bus Line Operation, 1 MCC 190 (1936), and Novak Contract Carrier Application, 103 MCC 555 (1967). In Pan-American, the Commission, in what has by now become a hackneyed litany for rebuffed applicants and thwarted protestants, stated:
 
 
 16
 The question, in substance, is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest.
 
 
 17
 Id. at 203. This language is a guideline, not a straitjacket. The important thing is the protection and promotion of the public interest, not that of the certificated carriers. Hilt Truck Line, Inc. v. United States, supra, 532 F.2d at 1203. In Bowman Transportation, Inc. v. Arkansas-Best Freight System, supra, 419 U.S. at 298, 95 S.Ct. at 448, the Court made the pertinent observation. "Our decisions have dispelled any notion that the Commission's primary obligation is the protection of firms holding existing certificates."
 
 
 18
 Petitioners argue, in effect, that, since the Commission found that the existing service was not inadequate, the granting of the application amounts to a disavowal of the principles enunciated in Pan-American. This completely ignores the current case law. In Hilt Truck Line, Inc. v. United States, supra, 532 F.2d at 1203, the court accurately reflected the present state of the law.
 
 
 19
 In making its determination, the Commission may take into account not only present needs but also future requirements of shippers, and the ability of existing carriers to supply such projected service will not preclude the Commission from granting authority to an applicant. Interstate Commerce Commission v. Parker, supra, 326 U.S. at 70, 65 S.Ct. at 1495, 89 L.Ed. at 2061. See United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639, 641 (1967); Schaffer Transportation Co. v. United States, 355 U.S. 83, 90-91, 78 S.Ct. 173, 177, 2 L.Ed.2d 117, 122 (1957).
 
 
 20
 See also Union Mechling v. United States, 390 F.Supp. 391, 405 (W.D.Pa.1974); Hudson Transit Lines, Inc. v. United States, 314 F.Supp. 197, 201-02 (D.N.J.1970).
 
 
 21
 In a future needs case such as this, the ICC's judgment is to be accorded great weight. As stated in United States v. Detroit Navigation,supra, 326 U.S. at 241, 66 S.Ct. at 77:
 
 
 22
 Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies. Its doubt that the public interest will be adequately served if resumption of service is left to existing carriers is entitled to the same respect as its expert judgment on other complicated transportation problems.
 
 
 23
 While the Commission did not recite or refer explicitly to the holding in Pan-American, we think it requirements were met as viewed in the context of applicable case law and the Commission's statutory duty.[5]
 
 
 24
 In Novak, supra, 103 MCC 555, 557, the Commission stated:
 
 
 25
 It will be seen that the shippers and consignees supporting an application for the transportation of property are asked to "identify clearly the commodities they ship or receive, the points to or from which their traffic moves, the volume of freight they would tender to applicant, the transportation services now used for moving their traffic, and any deficiencies in existing services." This is the minimum showing expected of any applicant seeking a grant of motor carrier authority.
 
 
 26
 Petitioners claim that this is a binding requirement which the Commission totally ignored in this case. We do not agree. Each of the shippers stated the area of present operation and the area it hoped to include in its future expansion. The argument that the phrase petroleum products is much too broad seems like grasping at a last straw. The petitioners, the applicant, and the shippers all knew what products were to be transported. It would appear to us that a common sense reading of the shippers' affidavits shows that the Novak requirements were met. Novak, like Pan-American, must be viewed through the prism of current case law against the background setting that Congress has entrusted to the ICC the role of carrying out the nation's transportation policy. Schaffer Transportation Co. v. United States, 355 U.S. 83, 87-88, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957). While the Novak standard may not have been strictly followed, we cannot say that the approach taken by the Commission was arbitrary and capricious. The failure of an applicant to fulfill the specific Novak requirements does not, in and of itself, require a reversal of the Commission's ruling. Alleghany Corp. v. United States, 554 F.2d 615, 620 (3d Cir. 1977). In a modified procedure case similar to this, a three-judge court observed that the Novak guidelines were not to be used as procedural hurdles in the decision making process of the Commission and ruled:
 
 
 27
 Even if the added competition from Moen Truck Line would cause the plaintiff in this action to lose revenues, this in itself would not be sufficient cause for the Commission to deny Moen's application. Mitchell Bros. Truck Lines v. United States, 327 F.Supp. 796, 798 (D.Or.1971); Alexandria Barcroft & Washington Transit Co. v. United States, 103 F.Supp. 607, 609 (E.D.Va.1951); Schaffer Transportation Co. v. United States, 355 U.S. 83, 91, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957); AB&C Transportation Co. Inc. v. United States, 69 F.Supp. 166, 169 (D.Mass.1946).
 
 
 28
 Twin City Freight, Inc. v. United States, 360 F.Supp. 709, 713-14 (D.Minn.1972). In the instant case, all the shippers stated that it was their intention to use the applicant to meet their future needs, so this is not a situation involving the loss of present revenues. There is no question here of diversion, but, even if there were, "(N)o carrier is entitled to protection from competition in the continuance of a service that fails to meet a public need, nor, by the same token, should the public be deprived of a new and improved service because it may divert some traffic from other carriers." Schaffer Transportation Co. v. United States, supra, 355 U.S. at 91, 78 S.Ct. at 178. This principle was reiterated in United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411-12, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967).
 
 
 29
 We find that the Commission's decision was based on substantial evidence and was not arbitrary and capricious.
 
 
 30
 There is one additional matter. By motion filed November 17, 1978, the Commission seeks a remand to correct an obvious error. It had decided to disregard the supporting evidence of a shipper (Sure Oil and Chemical Corp.) because it was no longer in business, but its certificate inadvertently included operations from West Boylston, Massachusetts, to points in New Hampshire which had been supported solely by Sure Oil.
 
 
 31
 The motion for remand is granted, the decision of the Commission in all other respects is affirmed.
 
 
 
 [1]
 Gasoline, aviation fuel, kerosene fuel, and lubricating oils
 
 
 [2]
 The interested parties submit evidence by written affidavits with arguments presented only in writing. 49 C.F.R. 1100.43-1100.52
 
 
 [3]
 Only three of the protestants have filed briefs. Appleyard Motor Transportation Co., Inc., appeals individually; Coastal Tank Lines, Inc., and Gault Transportation, Inc., have filed a joint brief. The fourth protestant, Robert Zapora, d/b/a Zapora Motor Trans., has not participated in this appeal
 
 
 [4]
 On page 26 of the brief of petitioners Coastal Tank Lines and Gault Transportation, the Second Circuit case of Long Island R.R. Co. v. United States, 568 F.2d 254 (1977), is cited as authority for reversing and remanding the Commission because of lack of substantial evidence. A reading of that case reveals that the ICC was upheld, not reversed as petitioners mistakenly assert. The quotation cited in the brief was limited to the findings of the ALJ which the Commission reversed because of lack of substantial evidence, which reversal was upheld by the court. A glaring mistake such as this does not inspire confidence in petitioners' brief
 
 
 [5]
 49 U.S.C. § 307(a):
 Subject to section 310 of this title, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied(.)